# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

MARANDA GAMETT,

     Plaintiff,

v.

ANDREW SAUL,
Acting Commissioner of
Social Security Administration,

     Defendant.

Case No.: 2:18-cv-01000-MMD-WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF Nos. 15, 20

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's Motion for Remand. (ECF No. 15.) The Acting Commissioner filed a Cross-Motion to Affirm and Response to Plaintiff's motion. (ECF Nos. 20, 21.) Plaintiff filed a reply brief. (ECF No. 22.) When Plaintiff filed her motion, Nancy A. Berryhill was the Acting Commissioner of Social Security. The new Acting Commissioner is Andrew Saul, and the caption now reflects this change.

After a thorough review, it is recommended that Plaintiff's motion to remand be denied, and the Acting Commissioner's cross-motion to affirm be granted.

## I. BACKGROUND

On September 3, 2014, Plaintiff completed an application for supplemental security income (SSI) under Title XVI of the Social Security Act, alleging disability beginning June 29, 1999, and subsequently amended the alleged onset date to September 3, 2014. (Administrative Record

(AR) 15, 148-154.) The applications were denied initially and on reconsideration. (AR 80-83, 96-99.)

Plaintiff requested a hearing before an administrative law judge (ALJ). (AR 100-101.) ALJ David K. Gatto held a hearing on December 6, 2016. (AR 33-48.) Plaintiff, who was represented by counsel, appeared and testified on her own behalf at the hearing. Testimony was also taken from a vocational expert (VE). On June 8, 2017, the ALJ issued a decision finding Plaintiff not disabled. (AR 12-27.) Plaintiff requested review, and the Appeals Council denied the request, making the ALJ's decision the final decision of the Acting Commissioner. (AR 1-8.)

Plaintiff then commenced this action for judicial review under 42 U.S.C. § 405(g). Plaintiff argues: (1) the ALJ improperly rejected the medical opinions of Dr. Vincent Ho; (2) the ALJ gave significant weight to the opinion of the agency reviewing Dr. Stephen Bailey, but did not incorporate his opinion that Plaintiff was capable of understanding, remembering and carrying out basic one- and two-step instructions into the residual functional capacity (RFC) assessment, and then concluded Plaintiff could perform jobs that exceed that reasoning requirement; (3) the ALJ's determination regarding Plaintiff's credibility is legally deficient; and (4) the ALJ improperly rejected the lay witness statement of Plaintiff's mother.

The Commissioner, on the other hand, argues: (1) the ALJ appropriately discounted Plaintiff's subjective allegations regarding her limitations; (2) the ALJ correctly evaluated the medical opinion evidence; (3) by giving significant weight to Dr. Bailey's opinion, the ALJ was not required to adopt the one- to two-step tasks limitation in the RFC, and properly found Plaintiff was capable of performing work in significant numbers in the national economy; and (4) the ALJ reasonably discounted the lay witness testimony of Plaintiff's mother.

## II. STANDARDS

**A. Disability Process**

After a claimant files an application for disability benefits, a disability examiner at the state Disability Determination agency, working with a doctor(s), makes the initial decision on the claimant's application. *See* 20 C.F.R. §§ 404.900(a)(1); 416.1400(a)(1). If the agency denies the claim initially, the claimant may request reconsideration of the denial, and the case is sent to a different disability examiner for a new decision. *See* 20 C.F.R. §§ 404.900(a)(2), 416.1400(a)(2). If the agency denies the claim on reconsideration, the claimant may request a hearing and the case is sent to an ALJ who works for the Social Security Administration. *See* 20 C.F.R. §§ 404.900(a)(3), 416.1400(a)(3). The ALJ issues a written decision after the hearing. *See* 20 C.F.R. § 404.900(a)(3). If the ALJ denies the claim, the claimant may request review by the Appeals Council. *See* 20 C.F.R. §§ 404.900(a)(4), 416.1400(a)(4). If the Appeals Council determines there is merit to the claim, it generally remands the case to the ALJ for a new hearing. If the Appeals Council denies review, the claimant can file an action in the United States District Court. *See* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.900(a)(5), 416.1400(a)(5).

**B. Five-Step Evaluation of Disability**

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his or her physical or mental impairment(s) are so severe as to preclude the claimant from doing not only his or her previous work but also, any other work which exists in the national economy, considering his age, education and work experience. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. §404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.152(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. If the claimant has an impairment(s) that is severe, the Commissioner proceeds to step three.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the claimant's impairment(s) meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education or work experience. 20 C.F.R. § 404.1525(a), § 416.925(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past

relevant work is that which a claimant performed in the last 15 years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(a).

In making this determination, the Commissioner assesses the claimant's residual functional capacity (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4)(v), § 416.920(a)(4)(v); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545 and § 416.945. In determining the RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of the limitation(s), and medical reports, to determine what capacity the claimant has for work despite his or her impairments. 20 C.F.R. § 404.1545(a)(3) and 416.945(a)(3).

A claimant can return to previous work if he or she can perform the work as he or she actually performed it, *i.e.*, if he or she can perform the "actual functional demands and job duties of a particular past relevant job," or as generally performed, *i.e.*, "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted). If the claimant can still do past relevant work, then he or she is not disabled. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131.

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work available in the national economy. 20 C.F.R. §§ 404.1520(e), 416.920(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740

5

F.3d 519, 528 (9th Cir. 2014). The Commissioner must also consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a VE or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).[1]

If at step five the Commissioner establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566(b), § 416.966(b). Conversely, if the Commissioner determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g), § 416.920(g); *see also Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

**C. Judicial Review & Substantial Evidence**

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez*, 740 F.3d at 522 (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir.

---

[1] The Grids look at various combinations of factors relevant to a claimant's ability to work to determine whether the claimant is disabled in certain scenarios.

2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id.* (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

### III. DISCUSSION

**A. ALJ's Findings in this Case**

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the date of her application/alleged onset date. (AR 17.)

At step two, the ALJ concluded Plaintiff had the following severe impairments: attention deficit hyperactivity disorder (ADHD), attention deficit disorder (ADD), depression/major depressive disorder, migraine headaches, a history of seizures (remote), and an unspecified neurodevelopmental disorder. (AR 17.)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 19-21.)

At step four, the ALJ assessed Plaintiff as having the RFC to perform work at all exertional levels; however, due to her history of seizures and migraines, she could: never climb ladders, ropes or scaffolds; never be exposed to hazards; could only have occasional exposure to dusts, fumes, gases and poor ventilation; and must work in an environment with a noise level commensurate to that of an office setting. As a result of her mental impairments, Plaintiff was limited to: understanding, remembering and carrying out simple instructions to perform work that needs little or no judgment; doing simple duties that can be learned on the job in a short period of 30 days or less; having no more than brief, superficial contact with public and co-workers; and, to only occasional changes in work routine due to reduced stress tolerance. (AR 21.)

The ALJ then concluded Plaintiff had no past relevant work. (AR 25.)

At step five, the ALJ determined, based on VE testimony, that considering Plaintiff's age, education, work experience and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including: packager (Dictionary of Occupational Titles (DOT) 920.687-014, assembler (DOT 317.687-010), and kitchen helper (DOT 317.687-010). (AR 25-26.) As a result, the ALJ found Plaintiff not disabled from September 3, 2014, through the date of the decision. (AR 26.)

**A. Dr. Ho's Opinions**

**1. Standard**

"Courts 'distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physician); and (3) those who neither examine nor treat the claimant (nonexamining physicians).'" *Garrison*, 759 F.3d at 1012 (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).

The Social Security Administration amended its regulations regarding the evaluation of medical evidence for claims filed on or after March 27, 2017, so that there is no longer a hierarchy for treating, examining or non-examining sources for those cases. *See* 20 C.F.R. § 404.1520c(a), 416.920c(a). This claim was filed before March 27, 2017; therefore, the new regulations are not applicable. For claims filed before March 27, 2017, 20 C.F.R. §§ 404.1527 and 416.927 govern how an ALJ must weigh medical evidence. Those regulations afford "treating sources" controlling weight in certain circumstances. *See also* Social Security Ruling (SSR) 96-2p, 1996 WL 374188 (July 2, 1996).[2] Even when the treating sources are not given controlling weight, they are still entitled to deference. *Id.*

The Ninth Circuit has similarly held that "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citation and quotation marks omitted). "[T]he opinion of a treating physician is thus entitled to greater weight than that of an examining physician, [and] the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Id.* (citation omitted). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be] given controlling weight." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (citation and quotation marks omitted); *see also Revels v. Berryhill*, 874 F.3d 648, 854 (9th Cir. 2017) (citing 20 C.F.R. § 404.1527(c)(2)). "The weight afforded a non-examining physician's testimony depends on the

---

[2] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). Although they do not have the force of law, in the Ninth Circuit they are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

degree to which [he or she] provide[s] supporting explanations for [his or her] opinions." *Garrison*, 759 F.3d at 1012 (citation and quotation marks omitted).

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted). To reject a treating or examining doctor's opinion that is contradicted by another doctor's opinion, the ALJ must "provid[e] specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (citation and quotation marks omitted). "Where an ALJ does not explicitly reject a medical opinion or set forth specific legitimate reasons for crediting one medical opinion over another, he errs." *Garrison*, 759 F.3d at 1012 (emphasis added).

Plaintiff argues that Dr. Ho's opinions are uncontradicted and the clear and convincing reasons standard should apply because the only other opinions in the record are those of non-examining, non-treating physicians. (ECF No. 22 at 2.) She relies on *Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th Cir. 1984), which in turn cites *Millner v. Schweiker*, 725 F.2d 243, 245 (4th Cir. 1984), which held that the report of a non-examining provider "should be discounted and is not substantial evidence when contradicted by all other evidence in the record." It is not the case here that the opinions of the two State agency reviewing providers are contradicted by all the other evidence in the record; therefore, *Gallant* and *Millner* are inapposite.

Plaintiff also points to *Winans v. Bowen*, 853 F.2d 643 (9th Cir. 1987), and asserts that the court referred to the treating physician's opinion as "uncontradicted evidence" despite contrary opinions of the agency's non-examining physicians. (ECF No. 22 at 2.) The *Winans* opinion Plaintiff cites to was superseded by 820 F.2d 1519 (9th Cir. 1987). In that opinion, the court said that the case was "not one of *contradictory evidence of a physical impairment*," but instead, one

where "a treating physician's opinion on the ultimate question of the degree of impairment differs from that of the examining physicians." 820 F.2d at 1523 (emphasis added). The court went on to state the rules that *conflicts in evidence* are resolved by the ALJ, but "when the conflict is between the *opinions* of a treating physician and an examining physician it is the rule in this circuit that if the ALJ wishes to disregard the opinion of the treating physician, he … must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id.* (internal quotation marks and citation omitted, emphasis added). Thus, the *Winans* case does not stand for the proposition Plaintiff suggests. Instead, it also directs that the court apply the specific, legitimate reasons standard in this instance where the court is faced with contradictory opinions between treating and non-examining providers.

### 2. Summary of Mental Health Evidence

Records from Clark County School District from 2011 and 2013 indicate that Plaintiff was participating in special education courses and had a history of attention deficit hyperactivity disorder (ADHD), obsessive compulsive disorder (OCD), severe migraines, seizure disorder (though she has been seizure free for quite some time) and central auditory processing disorder (CAPD). These issues were continuing to impact her academic progress, and she required additional support and services to help her stay focused in class and to complete her assignments in a timely manner. It was noted that she needed to have core concepts explained to her over and over again. It was noted that her greatest deficit was in math, and she had scored below grade level for her last scholastic reading inventory. Her English teacher reported that Plaintiff had an A average, completed her work on time, came to class equipped, achieved on tests, paid attention, followed directions, used her class time well and had excellent behavior. Another note stated that

she was slightly distracted, and fidgety in the classroom setting, and had inattention problems. She ultimately graduated with an adjusted high school diploma. (AR 238-255.)

She saw Dr. Donald Johns regarding her ADHD, oppositional defiant disorder (ODD), insomnia, migraines, depression and for medication management on January 9, 2013. Dr. Johns noted that Plaintiff enthusiastically said she was doing good. They had tried to wean her off Aderall, but that did not go well (she was hyper and wanting to do many things at once while getting little done) and she resumed the medication. She also tried to go off Tenex, but this affected her attitude. She had not had a recent headache. She reported that Celexa remained helpful for her depression. (AR 266.) She was to continue with Celexa, Tenex, Adderall and her medications for migraines and insomnia and follow up in six months. (AR 267.) When she saw Dr. Johns again on September 18, 2013, she was "doing okay." She had gotten her high school diploma, but was not working and her mother did not think she was ready for a full time job yet. She was to continue Celexa for depression and Adderall for ADHD, as well as her migraine and insomnia medications. (AR 263-65.) She saw Dr. Johns again on March 10, 2014. Her evaluation, psychiatrically speaking, was normal. She was ready to wean off of Aderall and then Tenex. She was still taking Celexa for her depression. (AR 261-62.)

She was seen for a physical by Dr. Robert Tolentino on August 13, 2014, and at that time she stated she wanted to go back on Fluoxetine for her depression. She was prescribed Fluoxetine and referred to psychiatry. (AR 308.) She was seen for an initial psychological evaluation by Sherit Thomas-McDade on August 29, 2014. She was described as seeking mental health services due to bereavement following the loss of her uncle and grandparent, and a recent breakup with her boyfriend. She reported a depressed mood, difficulty sleeping, grief, and anxiety. She indicated that in her free time she would read, listen to music and spend time with her family. She had some

mental health treatment approximately three years earlier. On examination, she was friendly with a calm mood and appropriate affect, she had articulate speech with logical thought process, and normal attention, good memory and fair judgment and insight. She had an average IQ. She was diagnosed with depressive disorder and was taking Prozac.

(AR 351-352, 355, 358-359, 360-361.)

On September 6, 2014, Plaintiff voluntarily admitted herself to Seven Hills Behavioral Institute for increased depression. She reported an increase in psychosocial stressors including the death of a grandparent and her uncle, and a recent breakup. She had an increase in depressed mood, isolation, feelings of guilt and hopelessness along with passive thoughts of death. She had a prior history of self-mutilation by cutting. She was engaged in treatment and willing to re-start her psychotropic medications and make adjustments for improvement in her mood. She reported that Prozac had been moderately helpful for her depression, and wanted to continue that medication. Her behavior was calm, and she was cooperative and pleasant with coherent thought form. She had a depressed mood and consistent affect, with intact cognition, an average fund of knowledge and average intelligence. Her immediate, recent, long-term and short-term memory were intact. Her insight and judgment were fair, and her impulse control was poor. She was diagnosed with major depressive disorder, severe, and ADD by history. Her psychological evaluation, mental status examination and records were consistent with depressive symptoms that were exacerbated over the prior two months by psychosocial stressors of losing family members and the breakup with her boyfriend. She was admitted for four days for stabilization of her mood symptoms. She was started on Prozac. (AR 270-275, 283-285.) She was discharged on September 10, 2014, and was described as responding well to treatment with antidepressant and activities in the unit. She reported a significant improvement of her mood. Her thoughts were linear and goal directed, and

future oriented. Her mood was much better, with a full, bright and smiling affect. She had fair insight, judgment and impulse control. She was directed to follow up with psychiatrist Dr. Vincent Ho at Harmony Healthcare for medication management, therapy and counseling. (AR 271-272.)

On September 30, 2014, Plaintiff was seen for a follow up after being on depression medication for one month following her hospitalization at Seven Hills. Her Fluoxetine dose was increased and she was started on Vistaril, and reported feeling much better. She was assessed with major depression, single episode, and was described as doing well on her medications. (AR 302.)

At the initial level, state agency disability psychologist R. Torigoe, Ph.D., reviewed Plaintiff's disability application at the initial level and found Plaintiff was not significantly limited in her ability to carry out short and simple or detailed instructions. She was moderately limited in her ability to: perform activities within a schedule, maintain regular attendance and be punctual, sustain an ordinary routine without special supervision. She was not significantly limited in her ability to work in coordination with or in proximity to others without being distracted, or to make simple work related decisions. She was moderately limited in her ability to complete a normal workday/week without interruptions from her psychological symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and, interact appropriately with the general public and in her ability to get along with co-workers and peers without distracting them. (AR 59.)

On March 19, 2015, Plaintiff was seen by psychologist Alan Fitton, Psy. D., of Harmony Healthcare, for a psychological testing evaluation to evaluate her cognitive functioning as part of her disability application. She had an appropriate affect and pleasant mood, was cooperative and engaged. Her speech was logical, coherent and goal directed. She was attentive and able to complete tasks presented without difficulty. She did not require re-direction or to have questions

or instructions repeated. She was diagnosed with mild intellectual disability, unspecified neurodevelopmental disorder, with specific impairments in executive functioning, general problem solving, and visual-perceptual abilities, that were moderate in severity. (AR 369-372.)

Dr. Ho filled out a medical source statement form and mental impairment questionnaire. Plaintiff's diagnoses included depressive disorder and mild intellectual disability. Her treatment included medication and therapy. She was taking Prozac, Topamax and Vistaril. He checked boxes indicating that Plaintiff's symptoms included: difficulty thinking or concentrating, intense and unstable interpersonal relationships and impulsive and damaging behavior, emotional lability, and easy distractibility.

Dr. Ho opined that Plaintiff was not limited or had a very good ability to remember work-like procedures. She had limited but satisfactory ability to: understand, remember and carry out short and simple instructions, maintain attention for two-hour segments, maintain regular attendance and be punctual, sustain an ordinary work routine without special supervision, make simple work-related decisions, and ask simple questions or request assistance. She was seriously limited, but not precluded, in her ability to: work in coordination with or proximity to others without being unduly distracted, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, and to be aware of normal hazards and take appropriate precautions. She was unable to meet competitive standards to: complete a normal workday/week without interruptions from psychologically based symptoms, respond appropriately to changes in a routine work setting, and deal with normal work stress.

Dr. Ho further opined that Plaintiff was seriously limited but not precluded in her abilities to: understand, remember, and carry out detailed instructions, and in her ability to set realistic goals, make plans independently of others to in dealing with the stress of semiskilled or skilled work. Her ability was limited but satisfactory to: maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, and use public transportation. She was seriously limited but not precluded from: interacting appropriately with the general public, and traveling to an unfamiliar place. Dr. Ho indicated that Plaintiff had a low IQ or reduced intellectual functioning and when asked to explain, he referred to the psychological testing from Dr. Fitton. Dr. Ho estimated that on average Plaintiff would be absent more than four days a month. Finally, Dr. Ho opined that Plaintiff had no restrictions or mild restrictions in activities of daily living, and moderate difficulties with maintaining social functioning and maintaining concentration, persistence or pace. (AR 374-76, 517-522.)

On October 13, 2015, Stephen Bailey, M.D., reviewed Plaintiff's disability determination at the reconsideration level. He opined that Plaintiff had mild restriction in activities of daily living, and moderate difficulty maintaining social functioning and concentration, persistence and pace. He indicated that a review of the record did reveal borderline intellectual functioning diagnoses, and the neuropsychological evaluation results indicated average and borderline range memory and neuropsychological functioning and a diagnosis of mild intellectual disability. He opined that this was questionable, noting that Plaintiff's immediate memory from the same assessment was average, her language was low average, and her delayed memory was low average, and the perceptual reasoning was the only score that fell into the extremely low range. He stated that the IQ of 68 seemed questionably representative of her abilities. He stated that the initial evaluation

was close in scope to that of Dr. Flitton who indicated that Plaintiff was seriously limited but not precluded in some areas. (AR 71-72.)

Dr. Bailey opined that Plaintiff was moderately limited in her ability to remember and understand detailed instructions, but she could understand and remember work locations and procedures of a simple, routine nature. She was moderately limited in her ability to carry out detailed instructions, and in her ability to maintain attention and concentration for extended periods. She could maintain concentration and attention for simple tasks in two-hour increments, and could sustain an eight-hour a day, 40-hour week. She was moderately limited in her ability to interact appropriately with the general public and get along with co-workers or peers without distracting them. She could interact appropriately in brief, casual encounters with the public and co-workers, and was able to respond appropriately to nonconfrontational feedback and supervision. Her working environment should limit continuous and prolonged contact with others. He further opined that Plaintiff could understand, remember and carry out basic, one- and two-step instructions; she could make commensurate decisions at work and adjust to changes in a routine work setting; and could work with and around others. (AR 75-76.)

Finally, there is a notation that appears to be dated April 28, 2016, stating that Plaintiff was under the care of Eugene Rosenman, M.D., and she had diagnoses of bipolar disorder and ADHD. (AR 516.) Plaintiff testified that Dr. Rosenman was her new psychiatrist.

**3. Analysis**

The ALJ provided a summary of Dr. Ho's opinions, and then assigned little weight to his assessment, finding it was not consistent with the overall record. The ALJ first stated that, most significantly, the opinions were inconsistent with the testing results documented by Dr. Flitton, and the unremarkable course of treatment described by Dr. Rosenman. In addition, the ALJ

indicated the opinions were not consistent with the documented favorable response to routine medication management. Finally, the ALJ found the opinions inconsistent with Plaintiff's ability to earn "A/B" grades while in school. (AR 24.)

The court agrees with Plaintiff that the ALJ should have explained what portions of Dr. Ho's opinions were inconsistent with the testing results documented by Dr. Flitton. *See Garrison*, 759 F.3d at 1012 ("'The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.'").

Nevertheless, the Ninth Circuit has held that where an ALJ provides valid reasons supporting the record for discrediting a medical provider's opinions or claimant's testimony, but also sets forth one or more invalid reasons, then the error with respect to the invalid reasons may be harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115-16 (9th Cir. 2012).

Plaintiff is correct that Dr. Flitton and Dr. Ho concluded that she suffers from a mild intellectual disability; however, a finding of an intellectual disorder that does not meet or equal Listed Impairment 12.05 does not automatically amount to a finding that a claimant is disabled.[3] An intellectual disorder can span a wide range from mild, as Dr. Flitton opined here, to severe. Whether a person with an intellectual disorder (that does not meet Listed Impairment 12.05) is disabled will depend on the particular nature of that person's functional limitations. Therefore, it must be demonstrated that the claimant with an intellectual disorder has impairments that limit her functional abilities such that she is unable to perform work.

///

///

---

[3] Plaintiff does not argue that the ALJ should have found she met the Listed Impairment for intellectual disorder (12.05), which would make her presumptively disabled at step three.

The record supports the ALJ's conclusion that Dr. Ho's opinions are inconsistent with the overall medical record which reveals, generally, an unremarkable course of treatment that responded well to medication treatment.

Plaintiff's minimal mental health records reveal that Plaintiff was being treated for ADHD/ADD/ODD and depression and overall was doing well on her various medications. Plaintiff did have one voluntary inpatient admission, but her worsening depression at that time was found to be secondary to recent stressors including deaths of relatives and a breakup with her boyfriend. She was placed on medication and participated in activities, and was discharged four days later and reported significant improvement of her mood, with an affect that was full, bright and smiling. When she was seen for a follow up one month later she was noted as doing well on her medications. Even with the findings of mild intellectual disability and unspecified neurodevelopmental disorder, Dr. Fitton described Plaintiff as cooperative and engaged, with logical and coherent speech that was goal-directed; her attention and concentration were not observably untoward; her frustration tolerance was adequate; she was attentive and was able to complete the tasks presented to her without difficulty; and she did not require re-direction or to have questions or instructions repeated.

Plaintiff acknowledges that her grades in school were good, but argues that making A and B grades in modified, special education classes is not the same as doing so in regular education classes. The court does not disagree, but the ALJ's statement regarding Plaintiff making A and B grades, acknowledging she attended special education classes, is nevertheless a specific and legitimate reason given by the ALJ for giving less weight to Dr. Ho's opinions regarding the severity of Plaintiff's limitations. As was discussed above, Plaintiff required special education classes because she needed additional support and services to stay focused and complete

assignments in a timely manner. At least one of her teachers noted that she was completing her work on time, paid attention, followed directions, used class time well and had excellent behavior. While this was in the special education context, it could be interpreted as detracting from an opinion that claimed Plaintiff was limited to the degree Dr. Ho opined. *See Gutierrez*, 740 F.3d at 524 (citation omitted) (when the evidence may be interpreted more than one way, the court may not substitute its judgment for that of the ALJ). As was indicated above, there is a notation in her school records that a teacher

In sum, the court finds the ALJ did set forth specific and legitimate reasons supported by the record for assigning Dr. Ho's opinions less weight.

**B. Dr. Bailey's Opinion Re: One- to Two-Step Tasks and the ALJ's RFC**

Dr. Bailey opined, among other things, that Plaintiff could understand, remember and carry out basic one- and two-step instructions, and could make commensurate decisions at work. (AR 76.) The ALJ stated that Dr. Bailey opined that Plaintiff had the ability to perform simple tasks. The ALJ gave this opinion significant weight, finding it was consistent with the longitudinal record. (AR 24.) The ALJ's RFC similarly limited Plaintiff to understanding, remembering and carrying out simple instructions that need little or no judgment. (AR 21.) There was no specific mention of Dr. Bailey's limitation to basic one- and two-step instructions.

Plaintiff argues that this error is significant because two of the three jobs identified by the VE and adopted by the ALJ that Plaintiff could do at step five (the assembler and kitchen helper jobs) have reasoning levels of 2 or 3, which Plaintiff claims would exceed a limitation to one- and two-step instructions. Plaintiff contends that the remaining job, the packager, does not exist in significant numbers in the regional economy by itself.

1    The Acting Commissioner contends that by giving Dr. Bailey's opinion significant weight,

2  the ALJ was not required to track that opinion in formulating the RFC.

3    Dr. Bailey clearly opined that Plaintiff could understand, remember and carry out basic

4  *one- and two-step instructions*, and make commensurate decisions at work. In omitting the "one-

5  and two-step instructions" language from the discussion regarding Dr. Bailey's opinion and from

6  the RFC, the ALJ implicitly rejected that opinion without providing an explanation. "Where an

7  ALJ *does not explicitly reject a medical opinion* or set forth specific legitimate reasons for

8  crediting one medical opinion over another, he errs." *Garrison*, 759 F.3d at 1012 (emphasis added).

9  The Acting Commissioner is correct that the ALJ was not required to adopt Dr. Bailey's specific

10  one- to two-step instructions limitation; however, the ALJ *was* required to provide an explanation

11  for rejecting that portion of the opinion.

12    Plaintiff is correct that the error's significance is related to the fact that two of the jobs

13  identified by the VE and ALJ that Plaintiff could perform at step five have reasoning levels that

14  exceed the simple one- and two-step limitation. *See Rounds v. Comm'r of Soc. Sec. Admin*, 807

15  F.3d 996 (9th Cir. 2015) (level one reasoning correlates to a limitation to one- and two-step tasks,

16  and a job with level two reasoning would exceed that limitation, and the ALJ erred where the ALJ

17  did not elicit an explanation for the apparent conflict between the RFC and demands of level two

18  reasoning).

19    Whether the error is harmless, however, depends on the court's analysis with respect to the

20  third job identified by the VE and ALJ: the packager position. The parties acknowledge that this

21  position satisfies Dr. Bailey's limitation to one- and two-step instructions. Plaintiff argues,

22  however, that this is not sufficient to find the ALJ's error harmless because that job does not exist

23  in significant numbers in the region of Nevada. The Acting Commissioner, on the other hand,

1    contends that the VE's testimony regarding the number of packager jobs available nationally is

2    sufficient.

3         The VE testified that for the packager job there were 30,000 jobs available nationally, and

4    600 in Nevada. (AR 44. 46.) A significant number of jobs at step five can be *either* regionally (the

5    region in which the claimant resides) or in several regions of the country (national jobs). 42 U.S.C.

6    § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B). The courts have not set a bright-line rule for how

7    many jobs it takes to constitute a "significant number." In *Gutierrez v. Commissioner of Social*

8    *Security*, 740 F.3d 519 (9th Cir. 2014), the court held that 25,000 jobs nationwide satisfied the

9    significant number requirement. *Gutierrez*, 740 F.3d at 528-29. The Ninth Circuit commented,

10   however, that whether 25,000 national jobs was a significant number was a "close call." *Gutierrez,*

11   740 F.3d at 529 (citing *Moncada v. Chater,* 60 F.3d 521, 524 (9th Cir. 1995) (per curiam) (finding

12   64,000 nationwide jobs significant); *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002)

13   (finding 622,000 nationwide jobs significant); *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000)

14   (finding 125,000 jobs nationwide significant); *Beltran*, 700 F.3d at 390 (finding 1,680 nationwide

15   jobs insignificant); *Johnson v. Chater*, 108 F.3d  178, 180 (8th Cir. 1997) (10,000 national jobs

16   significant)). In light of *Gutierrez*, the court must find that 30,000 packager jobs available

17   nationally is a significant number; therefore, the ALJ's error in failing to accept or set forth a reason

18   for rejecting the one- and two-step instruction limitation of Dr. Bailey's opinion is in fact harmless.

19   **C. Claimant Credibility**

20        **1. Plaintiff's Testimony**

21        Plaintiff testified that she suffers from bipolar disorder and depression. Her medications

22   sometimes help with her manic episodes. (AR 36-37.) She indicated that due to her ADHD, she

23   has problems focusing, staying on task, making decisions and learning new tasks. (AR 37.)

She has not had seizures lately. (AR 38, 41.) She still has migraines, about once or twice a month, but her migraine medications are helpful. (AR 38, 42.) She also suffers from pain in her bank, right ankle and left knee, and her pain medications help this a little bit. (AR 38.)

In an average day, she gets up and eats breakfast and she listens to music, reads, plays video games and goes to the library. She eats lunch and dinner and plays with her phone. She can prepare simple meals for herself. She will also go to her boyfriend's house next door. She will take a shower once or twice a week because she does not feel like doing it and has to be told to do it. She has two dogs and a guinea pig that she feeds, waters, and plays with. She does not do any cooking or go grocery shopping by herself. She can do cleaning, laundry and dishes, but her mom has to tell her to do those things. She does not have friends or a car, and does not leave her home by herself. She can get herself dressed, though her mom helps pick out her clothes and tells her to get dressed. She does not need assistance bathing. (AR 38-42, 175-180.)

She testified that she could sit or stand for about thirty minutes before having to change positions. She can lift approximately five pounds with one hand, and ten pounds with both hands. (AR 40.) She indicated she did not follow instructions well, gets frustrated with authority figures, does not handle stress or change in routine well, and has trouble concentrating. (AR 179-180.)

### 2. Standard

"[A] claimant's credibility becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective statements may tell of greater limitations than can medical evidence alone." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001) (citing SSR 96-7P)). Thus, a claimant's credibility is often crucial to a finding of disability. The ALJ is responsible for determining credibility. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

There is a two-step test for determining the extent to which a claimant's symptom testimony must be credited:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is *not* required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.

> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Garrison*, 759 F.3d at 1014-15 (internal quotation marks and citations omitted, emphasis original).

**3. Analysis**

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of the symptoms are not entirely consistent with the medical and other evidence. (AR 22.)

First, the ALJ stated that Plaintiff's activities of daily living were inconsistent with her statements concerning the alleged intensity, persistence and limiting effects of her symptoms, citing her ability to independently bathe, feed and give water to her pets, prepare simple meals, do laundry and clean the bathroom at her own pace, count change, listen to music, watch television, read books, use a computer for Facebook activities, compose and send text messages, and occasionally talk on the phone. (AR 22.) The ALJ acknowledged Plaintiff's testimony that she did not perform chores, cook or grocery shop, but the ALJ found there was no medical basis or treatment recommendation explaining why she did nothing during the day, finding that the alleged

limiting effects of her symptoms were out of proportion with the objective clinical findings and observed functional restrictions. The ALJ indicated there was no evidence of muscle atrophy or loss that would be compatible with the alleged inactivity and inability to function, and she did not present to her long-term primary care physician as severely decompensated and non-functional.

In addition, the ALJ stated that the medical evidence did not substantiate Plaintiff's allegations of disabling limitations. The ALJ explained that Plaintiff's complaints regarding the frequency, severity and duration of her ADHD, OCD, major depressive disorder, unspecified neurodevelopmental disorder and history of seizures did not justify any further limitations than those based on the objective medical evidence and were accommodated in the RFC.

Insofar as Plaintiff claimed weakness and tiredness which made it difficult to do household chores, could sit and stand for only 30 minutes, lift 10 pounds with both hands and required two-hour long naps during the day, the ALJ stated that the objective medical findings and level of treatment were not suggestive of this level of severity. (AR 23.) The ALJ also mentioned that Plaintiff attended special education classes and earned A and B grades in school.

The ALJ found that the records indicated and Plaintiff testified that her migraines were well controlled with medication, and the history of migraines was nevertheless accounted for in the RFC by limiting her to work in an environment commensurate with an office setting. Similarly, Plaintiff testified that she has not had a seizure in ten years, but her history of seizures was accommodated in the RFC by restricting her from climbing ladders, ropes and scaffolds and from exposure to hazards.

The court finds that the ALJ set forth clear and convincing reasons supported by substantial evidence in the record for discrediting some of Plaintiff's subjective symptom statements, and where her symptoms statements were credited, the ALJ properly accounted for them in the RFC.

The only finding that Plaintiff specifically criticizes is the ALJ's statement concerning her activities of daily living. She argues that her activities are not inconsistent with her testimony she is unable to sustain focus or follow instructions well enough to make it through a typical workday. The ALJ did not conclude that Plaintiff did not have difficulty concentrating or following instructions, but instead, found that her ability to engage in the daily activities she testified to detracted from the alleged severity of her limitations. In addition to being able to engage in these activities, the medical evidence does not support the level of severity of limitations that Plaintiff alleges. Other than the one voluntary inpatient admission, where Plaintiff was successfully treated following worsening depression related to recent psychosocial stressors, there are minimal treatment records from her mental health providers and a lack of comments regarding any functional limitations, let alone functional limitations as severe as Plaintiff alleged.

Plaintiff also argues that under *Garrison* it is error to reject a claimant's testimony because mental health symptoms wax and wane in the course of treatment, since this is common with mental illness. The court is cognizant of the Ninth Circuit's direction regarding mental health symptoms in *Garrison*, but the longitudinal record showing a waxing and waning of mental health symptoms that was apparent in *Garrison* is not present here.

In sum, the court finds that the ALJ set forth clear and convincing reasons supported by the record for discrediting some of Plaintiff's subjective symptom statements, and the RFC reasonably accounted for her remaining symptoms.

**D. Lay Witness Testimony**

In a third party function report, Plaintiff's mother stated that Plaintiff has a hard time comprehending jobs to do at home, is very nervous and extremely emotional. In a regular day, Plaintiff can make a quick meal, listens to music, watches television and reads. She uses text

messaging, Facebook, and occasionally makes phone calls. She cares for her animals, but has to be reminded. She can dress herself and feed herself, but has to be reminded to bathe and brush her hair. She does cleaning and laundry, but needs constant reminding. She has trouble sleeping. She needs to be reminded to go places, and does not go anywhere by herself.

Plaintiff's mother stated that she constantly has to ask and remind her daughter to do her tasks, and can only give one command at a time. Plaintiff can pay attention for maybe an hour, and has a hard time with instructions, but follows written instructions better than spoken. Plaintiff is argumentative and does not handle stress or change in routine well. (AR 182-190.)

"'Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012)). "An ALJ may reject a lay witness's testimony only 'upon giving a reason germane to that witness.'" *Id.* (quoting *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007)).

The Ninth Circuit has not "required the ALJ to discuss every witness's testimony on an individualized, witness-by-witness basis," and "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114 (citation omitted).

The ALJ acknowledged the third party statement of Plaintiff's mother and stated that it was reviewed and considered, but was given little weight because it was not supported by the clinical or diagnostic medical evidence discussed in detail in the decision. (AR 22.) The ALJ then went on to discuss all of the factors that were discussed relative to Plaintiff's testimony.

The court finds that the ALJ rejected Plaintiff's mother's statement for similar reasons as the ALJ rejected Plaintiff's own statements regarding the alleged severity of her limitations, and

therefore, sufficiently set forth germane reasons relative to discrediting Plaintiff's mother's statement.

**E. Conclusion**

The court has found that the ALJ erred only in failing to specifically reject and provide an explanation for rejecting Dr. Bailey's opinion that Plaintiff is limited to one- and two-step instructions; however, that error is harmless because one of the jobs identified by the VE and adopted by the ALJ at step five accounts for such a limitation, and is available in significant numbers in the national economy. Otherwise, the ALJ set forth legally sufficient reasons for discrediting the opinions of Dr. Ho, as well as Plaintiff's subjective symptom statements and the lay witness statement of Plaintiff's mother.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **DENYING** Plaintiff's motion for remand (ECF No. 15), and **GRANTING** the Acting Commissioner's cross-motion to affirm (ECF No. 20).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

///

///

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: February 10, 2020.

William G. Cobb
United States Magistrate Judge